UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIS HILL and KAMEO HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 4847 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| THE CITY OF CHICAGO, and CHICAGO ) | |
| POLICE OFFICERS ZACHARY RUBALD ) | |
| (Star 14540), ROBERT JOHNSON ) | |
| (Star 17034), and GUY HABIAK, JR. ) | |
| (Star 9921), ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiffs Demetris and Kameo Hill were stopped by Chicago Police Officers Zachary Rubald, Robert Johnson, and Guy Habiak, Jr. (collectively, the "Defendant Officers") while driving through Chicago, Illinois on July 2, 2011. Mr. Hill was arrested and charged with aggravated unlawful use of a weapon, a charge for which he was ultimately found not guilty. Mr. and Mrs. Hill subsequently filed suit against the Defendant Officers and the City of Chicago (the "City"), alleging unlawful seizure (Count I); civil conspiracy to violate Mr. Hill's constitutional rights (Count II); violation of the Racketeer Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count III); violation of due process (Count IV); an equal protection class of one violation (Count V); a *Monell* claim against the City (Count VI); malicious prosecution (Count VII); conspiracy to commit malicious prosecution (Count VIII); intentional infliction of emotional distress ("IIED") (Count IX); indemnity (Count X); and respondeat superior (Count XI). Before the Court is Defendants' motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6), which is granted in part and denied in part.[1] The unlawful seizure claim and any claims based on unlawful seizure are time-barred. The RICO claim is dismissed for failure to sufficiently allege racketeering activity. Mr. Hill's due process claim is not cognizable because the allegedly withheld evidence was not suppressed. The *Monell* claim fails for lack of an underlying constitutional violation. The IIED claim is dismissed except as it is based on the issuance of a warrant for Mr. Hill's arrest on the day he was found not guilty of all charges. Mr. Hill's equal protection, malicious prosecution, conspiracy to commit malicious prosecution, indemnity, and respondeat superior claims survive.

## BACKGROUND[2]

Mr. and Mrs. Hill were moving from Minnesota to Georgia when they passed through Chicago on July 2, 2011. On that date, they were stopped without cause or justification by the Defendant Officers while driving near 8400 S. Morgan. The Defendant Officers ordered Mr. and Mrs. Hill out of the car and then searched the car without their consent or any other legal justification. The Defendant Officers found a gun in a container in the trunk of the car, which was not accessible to Mr. and Mrs. Hill while they were driving. The gun was properly registered to Mr. Hill, but the Defendant Officers nonetheless arrested Mr. Hill, took him to the police station, and charged him with aggravated unlawful use of a weapon. The Defendant Officers also interrogated Mrs. Hill about her relationship with Mr. Hill and accused her of being a prostitute even though she was at all times married to Mr. Hill. The Hills' car was towed. Mrs.

---

[1] Defendants filed their motion to dismiss with respect to the Amended Complaint. Mr. and Mrs. Hill then were granted leave to file a Second Amended Complaint, which added Officer Habiak as a Defendant. The Court treats the motion to dismiss as if it was filed with respect to the Second Amended Complaint.

[2] The facts in the background section are taken from the Second Amended Complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Hill, who was unfamiliar with the area in which they were stopped, was left on the side of the road without a way to leave.

Mr. Hill was brought before a judge on July 2, 2011.[3] The judge found probable cause to detain Mr. Hill at that time. Mr. Hill spent eight days in Cook County Jail and then was released on bond. Mrs. Hill returned to Illinois to pick Mr. Hill up when he was released.

Beginning soon after his arrest, the Defendant Officers tried to intimidate Mr. Hill into pleading guilty and not proceeding with an internal complaint against them. This included damaging the Hills' car and stealing items from it while it was in police custody. The Defendant Officers also testified falsely, swore out false police reports, did not inform prosecutors about the true circumstances of Mr. Hill's arrest, and continued pursuing criminal proceedings against Mr. Hill. Mr. Hill nonetheless proceeded to trial. On June 6, 2013, Mr. Hill was found not guilty on all charges. Despite this finding, the Defendant Officers caused a warrant to be issued for Mr. Hill's arrest on that same day.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

---

[3] The Court may take judicial notice of this date, as it is found in the certified statement of conviction that Defendants have attached to their motion to dismiss and is not open to dispute. *See Adebiyi v. Felgenhauer*, No. 08 C 6837, 2010 WL 1644255, at *2 (N.D. Ill. Apr. 20, 2010) (taking judicial notice of certified statement of conviction).

3

1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678

## ANALYSIS

I.  **Statute of Limitations**

Defendants argue that the majority of Mr. and Mrs. Hill's claims are barred by the statute of limitations because they filed their complaint more than two years after the day they were stopped and Mr. Hill was arrested by the Defendant Officers. The statute of limitations is an affirmative defense that need not be anticipated in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint).

A.  **Federal Claims**

Section 1983 claims are governed by the forum state's statute of limitations for personal injury claims, in this case, two years. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001); 735 Ill. Comp. Stat. 5/13–202. Although the statute of limitations is borrowed from state law, federal law determines when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). Under federal law, § 1983 claims begin to accrue when a

4

plaintiff knows or has reason to know that his constitutional rights have been violated. *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992).

A false arrest claim accrues at the time the arrestee is detained pursuant to legal process, *i.e.* when he "is bound over by a magistrate or arraigned on charges." *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013) (citing *Wallace*, 549 U.S. at 397). Mr. Hill was arrested and bound over by a judge on July 2, 2011. He filed his complaint on July 3, 2013, which he admits makes his false arrest claim untimely. Mr. Hill, argues, however, that any seizure that occurred after the false warrant was created on June 6, 2013 is not time-barred. But the Second Amended Complaint includes no allegation of a seizure after June 6, 2013. Mr. and Mrs. Hill also acknowledge that their unlawful search claim is untimely, as it accrued on July 2, 2011. *See Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) ("[A] claim asserting a violation of the fourth amendment necessarily 'accrues' at the time of the unlawful search or seizure . . . ."). Thus, Count I is dismissed.

Defendants also argue that the federal conspiracy, equal protection, and *Monell* claims are time-barred because Mr. and Mrs. Hill knew they had been injured on July 2, 2011. Mr. Hill's federal conspiracy claim alleges that the Defendant Officers conspired to falsely arrest and illegally seize him and to deprive him of his right to a fair trial. His equal protection claim alleges that the Defendant Officers falsely arrested Mr. Hill and engaged in a pattern of misconduct that included intimidation and creation of false reports continuing past June 6, 2013. His *Monell* claim alleges that the City's custom or practice is to fail to supervise and train its police officers and to overlook and cover up officer misconduct with respect to false arrests, improper searches, and due process violations. To the extent the conspiracy, equal protection, and *Monell* claims are based on the alleged false arrest and illegal seizure, the claims are time-

5

barred. *See Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *3, 5 (N.D. Ill. Jan. 8, 2014) (finding conspiracy and *Monell* claims time-barred to the extent they were based on time-barred false arrest and excessive force claims); *Hill v. City of Chicago*, No. 06 C 6772, 2007 WL 1424211, at *4 (N.D. Ill. May 10, 2007) ("Any underlying constitutional claims that are time-barred, however, cannot form the basis for Plaintiffs' equal protection claims."). Mr. Hill's conspiracy, equal protection, and *Monell* claims are also based on alleged due process violations, which did not accrue until Mr. Hill's acquittal on June 6, 2013. These portions of his conspiracy, equal protection, and *Monell* claims are therefore timely. *See Hill*, 2007 WL 1424211, at *4 (allowing plaintiffs to proceed on equal protection and conspiracy claims to the extent they were based on timely due process violations).

**B.     State Law IIED Claim (Count IX)**

Mr. and Mrs. Hill's state law IIED claim is governed by a one-year statute of limitations. 745 Ill. Comp. Stat. 10/8-101; *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). In the context of arrest and prosecution, an IIED claim accrues on the date of the arrest. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). Here, because Mr. and Mrs. Hill were stopped on July 2, 2011, their IIED claim arising out of the stop and arrest is untimely. But Mr. Hill argues that his claim is not time-barred because his IIED claim is based not only on events surrounding his arrest but also on the Defendant Officers' actions in intimidating him throughout the duration of the prosecution and thus did not accrue until his state criminal proceedings were terminated. For support, he relies on *Caroccia v. Anderson*, a 2003 case in which the court noted that "courts in this district have consistently held that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated." 249 F.

6

Supp. 2d 1016, 1028 (N.D. Ill. 2003). Defendants counter by citing to *Bridewell*, in which the Seventh Circuit held that IIED is not a continuing wrong and noted that the "idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either." 730 F.3d at 678. *Bridewell*, however, left open the possibility that a new IIED claim could arise based on events after an initial injury where there is an allegation that the defendants acted with a "freshly formed intention to cause emotional distress." *Id.* ("Even if we were to suppose that a new claim could in principle be based on events after the initial injury, Bridewell's claim would fail because she does not contend that the detectives' ongoing failure to alert the prosecutor to the potential shortcomings in the evidence was motivated by a freshly formed intention to cause emotional distress.").

Here, to the extent that Mr. Hill's IIED claim arises from acts that occurred over a year before the complaint was filed, including his arrest, the tearing apart of his car, and his detention, the claim is time-barred. Based on *Bridewell*, Mr. Hill's IIED claim arising from defending against the criminal charges also is time-barred, as the allegedly bad intent with which his prosecution began continued through the time of his acquittal. *Id.* at 678–79. Any alleged distress he suffered that arose from the Defendant Officers' failure to investigate the circumstances surrounding Mr. Hill's arrest also is time-barred. *See id.* at 678 (noting that officers' poor investigation and refusal to cooperate with prosecutors did not amount to new instances of malicious prosecution "when the prosecution was already under way"). But to the extent that any acts of intimidation occurred within the one-year limitations period and can be said to have been done with a "freshly formed intention to cause emotional distress," Mr. Hill's IIED claim is not time-barred. *Id.* Because at the pleading stage that is difficult to determine, the Court must proceed to analyze the legal sufficiency of that claim's allegations.

## II.     RICO Claim (Count III)

To state a civil RICO claim, Mr. Hill must allege that the Defendant Officers conducted an enterprise through a pattern of racketeering activity. *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). A pattern of racketeering activity requires at least two predicate acts. 18 U.S.C. § 1961(5); *Jennings*, 495 F.3d at 472. "RICO demands more than a straightforward case of malicious prosecution." *Gamboa v. Velez*, 457 F.3d 703, 710 (7th Cir. 2006).

Defendants first argue that Mr. Hill does not have standing to pursue a RICO claim. To have standing to sue under RICO, Mr. Hill must demonstrate to the Court that he suffered an injury to his business or property "by reason of a violation of" the RICO statute. 18 U.S.C. § 1964(c); *Evans*, 434 F.3d at 924–25. He may not establish standing by pointing to "personal injuries and the pecuniary losses incurred therefrom." *Evans*, 434 F.3d at 925 (quoting *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992)). Mr. Hill argues that he has standing because he suffered damage to his car as a result of the RICO violation and to his business relationships because he was unable to move expeditiously to Georgia due to his eight-day incarceration. Income lost due to an inability to seek gainful employment while imprisoned is not a cognizable RICO injury. *Id.* at 926–27. *Evans*, however, does not foreclose the ability to establish standing by demonstrating that one has been "unlawfully deprived of a property right in promised or contracted for wages." *Id.* at 928. The complaint and Mr. Hill's response do not make clear whether Mr. Hill had a job awaiting him in Georgia. The Court need not determine whether Mr. Hill has standing under RICO, however, because even assuming that he does, his RICO claim must be dismissed for failure to adequately allege a pattern of racketeering activity.

Racketeering activity is defined by statute to include various crimes indictable under federal law as well as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Mr. Hill has not identified the potential crimes under which his claimed predicate acts fall. He was prosecuted in state court under state law, and thus the federal crimes identified in § 1961(1) related to obstruction of justice and witness tampering do not apply because they hinge on the presence of a federal proceeding. *See Engel v. Buchan*, 778 F. Supp. 2d 846, 855 n.20 (N.D. Ill. 2011); *Griffin v. City of Milwaukee*, No. 10-C-243, 2010 WL 4723420, at *7 (E.D. Wis. Nov. 15, 2010). The damage to Mr. Hill's vehicle could potentially be considered robbery. *See Montes v. DiSantis*, No. 04 C 4447, 2005 WL 1126556, at *7 (N.D. Ill. May 10, 2005) (alleged seizure and breaking of camera could qualify as allegation of predicate act of robbery for purposes of RICO claim). But the Court is unable to conclude that the remaining alleged predicate acts would qualify as racketeering activity under an acceptable state law crime. Although Mr. Hill relies on *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1014 (N.D. Ill. 2008), to argue that he has sufficiently alleged racketeering activity, *Reyes* is distinguishable because the plaintiff there actually pleaded more than one activity listed in § 1961(1), specifically, robbery and kidnapping. Mr. Hill's complaint lacks similar allegations. Thus, Mr. Hill has alleged at most only one predicate act, robbery, which is insufficient to state a RICO claim. 18 U.S.C. § 1961(5). The RICO claim (Count III) is therefore dismissed.

### III. Equal Protection Claim (Count V)

To state a class of one equal protection claim, Mr. Hill must at a minimum allege that (1) the Defendant Officers intentionally treated him differently than others who were similarly situated and (2) there was no rational basis for the difference in treatment or the cause of the differential treatment was an illegitimate animus towards him. *Woodruff v. Mason*, 542 F.3d 545, 554 (7th Cir. 2008).[4] A class of one claim can be based on the irrational or malicious application of law enforcement powers. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012).

Mr. Hill alleges that the Defendant Officers intimidated him, created false police reports, and pressured him to plead guilty and to refrain from filing an internal complaint. He further alleges that the Defendant Officers intentionally treated him differently than others who were similarly situated. Although he does not provide further details, his general allegation of being treated differently suffices at the pleading stage to meet the first element. *Geinosky*, 675 F.3d at 748 n.3 ("Even in a case where a plaintiff would need to identify a similarly situated person to prove his case, like [*McDonald v. Village of Winnetka*, 371 F.3d 992 (7th Cir. 2004)], we see no basis for requiring the plaintiff to identify the person *in the complaint*. . . . Even the more demanding pleading requirements under *Iqbal* and *Twombly* do not require a plaintiff to identify specific comparators in a complaint."). Mr. Hill also alleges that there was no rational basis for the difference in treatment. The Defendant Officers argue, however, that Mr. Hill's claim is indistinguishable from one for uneven law enforcement, such as the issuance of a parking ticket to one person but not another. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 604, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ("But allowing an equal protection claim on the ground that a

---

[4] The Seventh Circuit is divided as to whether a plaintiff must demonstrate that he or she was treated differently because of an improper motive. *See Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012).

ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action."). But Mr. Hill is not alleging "truly random law enforcement, as when an officer picks one of many speeding cars to stop and ticket," which "provides a rational basis for the selection even if the ticketed driver feels she was unfairly singled out." *Geinosky*, 675 F.3d at 749. Instead, Mr. Hill alleges that the Defendant Officers falsified police reports and attempted to intimidate him to plead guilty and to refrain from filing an internal complaint. Those allegations do not amount to discretionary actions. *See id.* (pattern of ticketing alleged in complaint was not a legitimate exercise of discretion where the number of baseless tickets was "highly unlikely to have been a product of random mistakes"); *Muczynski v. Lieblick*, No. 10-CV-0081, 2012 WL 5470738, at *4 (N.D. Ill. Nov. 8, 2012) (falsification of evidence and intentional false arrest could amount to equal protection violation); *Ivy v. Powers*, No. 08 C 3826, 2009 WL 230542, at *5–6 (N.D. Ill. Jan. 30, 2009) (distinguishing *Engquist* where plaintiff based claim on defendants' decision to file false police reports and criminal complaints to cover up for their alleged misconduct). Although Mr. Hill may not be able to prevail on his class of one claim, he has at least alleged enough to proceed to discovery on this claim.

## IV.  Due Process Claim (Count IV)

Defendants first argue that Mr. Hill's due process claim alleging a *Brady* violation is duplicative of his state law malicious prosecution claim and not cognizable under § 1983. *See Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012) (plaintiff cannot pursue a claim for malicious prosecution under the guise of a due process claim); *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010); *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001). Mr. Hill contends, however, that he has nonetheless alleged a claim for a *Brady* violation that is distinct from his

11

state law malicious prosecution claim. In order to assert a *Brady* claim, Mr. Hill must allege that (1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material, *i.e.* that there is a reasonable probability that prejudice ensued. *Alexander*, 692 F.3d at 556. Although the Seventh Circuit has "expressed doubt that an acquitted defendant can ever establish the requisite prejudice for a *Brady* claim," it has not foreclosed "the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial." *Id.*; *Petrishe v. Tenison*, No. 10 C 7950, 2013 WL 5645689, at *3 (N.D. Ill. Oct. 15, 2013) (collecting cases that have allowed *Brady* claims to proceed even where the plaintiff has been acquitted). Here, Mr. Hill has alleged that absent the Defendant Officers' actions, he would not have been prosecuted. This is sufficient to meet the materiality requirement.

A *Brady* violation, however, cannot be based on a police officer's false statements to prosecutors. *See Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008) ("It is already established law that *Brady* does not extend so far as to provide relief in a situation where 'a police officer makes a false statement to a prosecutor.'" (quoting *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007)). Nor can it be based on false testimony given by an officer at trial. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("The Constitution does not require that police testify *truthfully*; rather 'the constitutional rule is that the defendant is entitled to a fair trial that will enable jurors to determine where the truth lies.'" (quoting *Buie v. McAdory*, 341 F.3d 623, 625–26 (7th Cir. 2003))). Thus, Mr. Hill's *Brady* claim fails to the extent that it is based on false statements made by the Defendant Officers to the prosecutors or at trial. *See Petrishe*, 2013 WL 5645689, at *3 (*Brady* claim could not be based on false statements that defendants made to state investigators and in judicial proceedings). But Mr. Hill has also

12

alleged that the Defendant Officers created false police reports and his response suggests that the Defendant Officers tampered with evidence. *See Saunders v. City of Chicago*, Nos. 12-cv-09158, 12-cv-09170, 12-cv-09184, 2013 WL 6009933, at *8 (N.D. Ill. Nov. 13, 2013) ("The Seventh Circuit has held that allegations that officers created false evidence—including creating false written reports, tampering with physical evidence, and inducing witnesses to falsely identify a defendant as the perpetrator of a crime—state a cognizable *Brady* claim if the evidence is withheld from a criminal defendant." (citing *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013), and *Manning v. Miller*, 355 F.3d 1028, 1033 (7th Cir. 2004))).

The Defendant Officers maintain that the *Brady* claim still fails because Mr. Hill's allegations demonstrate that the evidence was not suppressed. "Evidence is 'suppressed' when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Carvajal*, 542 F.3d at 567. Mr. Hill's *Brady* claim fails on the second prong, for he has not sufficiently alleged that the withheld evidence was not otherwise available to him. He claims that the police reports regarding the incident were falsified and that "[n]o exercise of reasonable diligence could compel the officers who authored false reports to speak honestly about the circumstances of the arrest." Doc. 31 at 19. Initially, to the extent Mr. Hill attributes suppressed evidence to the Defendant Officers' failure to disclose the falsity of the police reports to the prosecutor, that claim is not cognizable because "*Brady* rights run only to the defendant, not the prosecutor." *Sornberger*, 434 F.3d at 1029. Moreover, the only plausible inference to be drawn from the Second Amended Complaint is that Mr. Hill was aware of the circumstances of the arrest and the alleged falsity of the information contained in the police report. In such a situation, *Brady* is not violated. *See Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) (*Brady*

13

not violated where defendant knew of information that was allegedly concealed); *United States v. Dawson*, 425 F.3d 389, 393 (7th Cir. 2005) ("*Brady* requires disclosure only of exculpatory material known to the government but not to the defendant."); *Craig v. City of Chicago*, No. 08 C 2275, 2011 WL 1196803, at *14 (N.D. Ill. Mar. 25, 2011) ("The Defendants' decision to manipulate the evidence they presented to the state's attorney cannot provide the basis for a *Brady* claim."). Similarly, Mr. Hill claims that the Defendant Officers tampered with the gun, uncasing it and loading it despite it being cased and unloaded in the trunk of his car at the time he was stopped. But this again is evidence Mr. Hill was aware of and could challenge in court, unlike a cognizable *Brady* violation of officers manipulating witnesses to make false statements in a manner unknown to the plaintiff where the plaintiff would have no reason to suspect that the officers were behind the witnesses' false statements. *See Booker v. City of Chicago*, No. 11 C 732, 2011 WL 6152290, at *2–3 (N.D. Ill. Dec. 6, 2011) (contrasting manipulation of witness identifications or statements with manipulation of evidence known to arrestee). Because Mr. Hill was aware of the manipulation and could challenge the false evidence in court, the evidence cannot be said to have been suppressed. *Id.* at *2. Mr. Hill's due process claim is thus dismissed.

## V.     *Monell* Claim (Count VI)

The City may be held liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to

14

constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Mr. Hill pursues his claim only through the second avenue of liability, and thus the Court need not consider whether liability can be established by the other two means.

Mr. Hill alleges that the City has a custom and practice of failing to train and supervise its police officers with respect to improper seizure and prosecution, the issuance of improper warrants without a legal basis, and the improper administration of due process. Mr. Hill also alleges that the City has a custom and practice of overlooking and covering up officer misconduct, failing to adequately investigate prior instances of misconduct so that officers are led to believe that their actions will never be scrutinized. The complaint sets forth the publicly available disciplinary history of the Defendant Officers as examples of the City's failure to discipline officer misconduct. Mr. Hill also alleges that despite frequent abuse of citizens' rights in the similar way to how his rights were abused, the City makes findings of wrongdoing in a disproportionately small number of cases and does not pursue criminal charges against officers where there is sufficient evidence for probable cause to believe officers committed crimes. Finally, Mr. Hill alleges that a code of silence exists by which police officers do not report misconduct committed by other officers and that the City is aware of and tacitly approves the misconduct alleged.

The Court has already determined that any *Monell* claim based on time-barred events cannot proceed, thus leaving only those claims related to violations of due process for the Court's consideration. But the failure of Mr. Hill's due process claim dooms the *Monell* claim. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 505 (7th Cir. 2010) (where officers' conduct did not violate Constitution, city could not be held liable under *Monell*).

15

Moreover, even if Mr. Hill had a viable due process claim, his *Monell* claims are too vague and conclusory, particularly with respect to the allegations of failure to train and supervise. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). "[A] municipality's failure to train in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (second alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Although *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing. *Armour*, 2014 WL 63850, at *6 (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011), and *Riley v. County of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)).

Here, Mr. Hill's allegations of the City's failure to train and supervise are vague and broad, without sufficient details to support the existence of a custom or policy. *Cf. Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 479–80 (7th Cir. 1997) (noting that Seventh Circuit reversed dismissal of *Monell* claim in *Sledd v. Lindsay*, 102 F.3d 282, 289 (7th Cir. 1996), because the complaint in *Sledd* included such details as the number of excessive force complaints filed against the Chicago Police Department, the number of complaints investigated, and the number of complaints the Police Department's Office of Professional Standards believed had merit); *Starks v. City of Waukegan*, No. 09 C 348, 2013 WL 5874563, at *2 (N.D. Ill. Oct. 31, 2013) (allowing failure to train claim to proceed where plaintiff alleged pattern of nine similar constitutional violations that City exacerbated by promoting instead of disciplining officers who were responsible for violations). The inclusion of the Defendant Officers' publicly available

16

disciplinary histories does not provide adequate support for the allegations of a custom or policy. The two allegations of due process violations are not sufficient to create municipal liability and the remaining allegations of violations are not relevant because Mr. Hill's false arrest and illegal search claims are time-barred. *See Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792–93 (N.D. Ill. 2013). Because Mr. Hill cannot proceed on a *Monell* claim, that claim is dismissed.

## VI. Conspiracy Claims (Counts II and VIII)

Mr. Hill brings two conspiracy claims, one under § 1983 to interfere with his constitutional rights (Count II) and one under state law to commit malicious prosecution (Count VIII). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). The Defendant Officers argue that Mr. Hill's conspiracy claims are too conclusory, as they do not indicate who was specifically involved and the dates of the alleged overt acts in furtherance of the conspiracy. But the Defendant Officers are asking too much from Mr. Hill at the pleading stage. *Twombly* and *Iqbal* did not impose a heightened pleading standard for conspiracy claims; "all plaintiff needed to allege was a plausible account of a conspiracy." *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). Here, Mr. Hill has done that, alleging that the Defendant Officers entered into an agreement amongst themselves to deprive him of his right to a fair trial and commit malicious prosecution and that the conspiracy began on July 2, 2011 and extended through June 6, 2013. But because the underlying due process and unlawful seizure claims on which his federal conspiracy claim are based have been dismissed, his federal conspiracy claim (Count II) must also be dismissed. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007) (section 1983 conspiracy claim is dependent on validity of underlying § 1983 claim). The Defendant Officers

17

have not challenged Mr. Hill's state law malicious prosecution claim, however, and so his claim of conspiracy to commit malicious prosecution (Count VIII) may proceed.

## VII. IIED Claim (Count IX)

Under Illinois law, to establish a claim for IIED, Mr. Hill must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)). To be considered extreme and outrageous conduct, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992)). The only potentially non-time barred allegations of extreme and outrageous conduct are that the Defendant Officers intimidated Mr. Hill in the year prior to the filing of the complaint. Drawing all inferences in Mr. Hill's favor, the allegation that the Defendant Officers caused a warrant to be issued for Mr. Hill's arrest on the day he was found not guilty of all charges could amount to extreme and outrageous conduct. As lack of extreme and outrageous conduct is the only basis on which the Defendant Officers challenge the IIED claim, Mr. Hill's IIED claim may proceed with respect to the issuance of the warrant for his arrest on June 6, 2013.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [27] is granted in part and denied in part. Count I is dismissed with prejudice. Count II is dismissed with prejudice with respect to time-barred claims and without prejudice as to non-time-barred claims. Counts III and IV are dismissed without prejudice. Count V is time-barred to the extent it is based on the alleged false arrest and illegal seizure but proceeds with respect to Mr. Hill's remaining allegations. Count VI is dismissed with prejudice to the extent it is based on alleged false arrest and illegal seizure and without prejudice to the extent it is based on due process violations. Count IX is dismissed with prejudice to the extent it is based on time-barred events but may proceed with respect to the issuance of the June 6, 2013 warrant.

Dated: May 14, 2014

_____
SARA L. ELLIS
United States District Judge