**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEMETRIS HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 4847 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| ZACHARY RUBALD, ROBERT JOHNSON, | ) | |
| GUY HABIAK JR., and THE CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brought this action against the City of Chicago and Chicago police officers Zachary Rubald, Robert Johnson, and Guy Habiak Jr. Plaintiff's claims stem from his traffic stop and arrest on July 2, 2011 and subsequent prosecution for aggravated unlawful use of a weapon. Defendants move for summary judgment on all of plaintiff's remaining claims pursuant to Federal Rule of Civil Procedure 56. For the reasons explained below, defendants' motion is granted in part, denied in part, and entered and continued in part.

## MATERIAL FACTS

### *The Traffic Stop, Arrest, and Criminal Charges*

Plaintiff, Demetris Hill, lived in Chicago until 2007, when he moved to Minnesota. (ECF No. 141, Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1.) In 2011, plaintiff moved from Minnesota to Georgia and has lived in Georgia since then. (*Id.*) On July 2, 2011, plaintiff and his wife, Kameo Hill, were passing through Chicago around 1:00 a.m. after having stopped to visit family while in the process of moving from Minnesota to Georgia. (*Id.* ¶ 2; ECF No. 130-5, Dep. of Demetris Hill 52-54.) Plaintiff was driving their Chevrolet TrailBlazer, traveling

westbound on 84th Street toward Morgan Street. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 3.) Officers Rubald, Habiak, and Johnson were on patrol together that night in an unmarked Chicago police vehicle driven by Johnson. (ECF No. 134, Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 10.)

Plaintiff says that he made a complete stop at the stop sign at 84th and Morgan and looked both ways before proceeding. (Demetris Hill Dep. 59, 128.) Rubald, however, says that plaintiff did not stop at the stop sign and instead tapped the brakes and drove through the intersection at about ten miles per hour. (ECF No. 130-7, Dep. of Zachary Rubald 22, 24.) The officers stopped plaintiff's vehicle just west of the intersection. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 13.) Rubald says that as he exited the police car, he saw plaintiff turn and move toward the back of his seat as if he was reaching behind it. (Rubald Dep. 27, 29.) Rubald approached plaintiff's vehicle, asked plaintiff to step out, and escorted him to the rear of the vehicle. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 16-18.) Mrs. Hill then exited the vehicle and was escorted to the passenger side of the police car. (*Id.* ¶ 19.)

Rubald asked plaintiff whether there was a weapon in his vehicle, and plaintiff said yes. (*Id.* ¶¶ 20-21.) An unloaded nine-millimeter handgun was recovered from the vehicle, as well as a nine-millimeter magazine that contained nine bullets. (*Id.* ¶¶ 22-23.)[1] There is a dispute about where the gun and ammunition were found. Rubald says that he entered plaintiff's car from the driver's door, reached back between the driver's seat and front passenger's seat over the center console, and retrieved the gun from the floor of the vehicle, where it was lying uncased, partially

---

[1]Plaintiff states that he disputes these facts, but the dispute concerns only where the gun and ammunition were found *within* the vehicle, as the Court will discuss below. Plaintiff does not properly dispute that the gun and ammunition were indeed found in his vehicle. Those facts (in paragraphs 22 and 23 of defendants' Local Rule 56.1(a)(3) Statement) are therefore deemed admitted. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

underneath the back seat. (Rubald Dep. 41-43.) He says that he found the magazine with ammunition in the center console. (*Id.* at 46.) But according to plaintiff and his wife, plaintiff's gun was in a closed case, in a compartment for the spare tire located under the floorboard of the TrailBlazer, which the officers accessed by lifting the rear hatch and then opening the compartment door. (Demetris Hill Dep. 102-03; ECF No. 130-6, Dep. of Kameo Hill 40-42.) Plaintiff and his wife also say that the ammunition for the gun was in the locked glove compartment. (Demetris Hill Dep. 107-08; Kameo Hill Dep. 54-57.) Mrs. Hill testified at her deposition that she deliberately put the gun and ammunition in those places when she was packing the car in order to make the gun inaccessible and because she was not comfortable with it "just sitting out," as well as to separate the gun and ammunition "because they're not supposed to be close to each other." (Kameo Hill Dep. 56-58.)

Plaintiff's TrailBlazer had Minnesota license plates, and plaintiff had his possession his valid Minnesota driver's license, which showed his Lakeville, Minnesota address. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 9-10.) Although plaintiff had an expired Illinois Firearm Owner's Identification Card ("FOID"), he showed Rubald that he had a valid "Minnesota State Permit to Acquire Handguns from Federal Firearms Dealers" (the "Minnesota permit"). (*Id.* ¶ 8; Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 24; ECF No. 130-12, Defs.' Ex. L.) Plaintiff and his wife say that Rubald took this permit from plaintiff's wallet and tossed the permit on the hood of the police car. (Demetris Hill Dep. 113; Kameo Hill Dep. 45.) Mrs. Hill was unable to hear the entire ensuing conversation between plaintiff and Rubald but recalls that with respect to the permit, Rubald asked, "What does that mean? What is this?" and plaintiff replied, "That's a Minnesota license to carry a firearm. That's what they gave me." (Kameo Hill Dep. 45-46.) Plaintiff says that Rubald replied, "That doesn't mean anything in this state." (Demetris Hill

Dep. 113.) Rubald denies that he put the contents of plaintiff's wallet on the hood of the police car, but he does not deny that he made such a comment about the Minnesota permit. (Rubald Dep. 63-64; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12.)[2] Rubald testified at his deposition that he "couldn't verify that it was actually a . . . legal Minnesota card"; the Minnesota permit was only for buying firearms and "didn't mention anything about carrying them"; and that "because it didn't pertain to Illinois law," he did not take any steps to investigate whether it was a legal Minnesota card. (Rubald Dep. 69.)

Plaintiff was arrested and handcuffed. Rubald and Habiak transported him in their police vehicle to the Sixth District police station. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 25.) Mrs. Hill was left alone at the scene and had to call family members for a ride. (Kameo Hill Dep. 63-66.) Johnson drove plaintiff's vehicle from the scene to the station, where it was parked in a secure parking lot. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 26.) At 3:30 a.m., plaintiff's vehicle was towed from the police station to an impound lot near 103rd Street and Doty Avenue. (*Id.* ¶ 30.)

At the police station, Rubald spoke on the telephone with Cook County State's Attorney Nicholas Kantas and asked Kantas what charges, if any, should be brought against plaintiff. (*Id.* ¶ 33.) At 3:45 a.m., the Cook County State's Attorney's Office approved a charge against plaintiff for aggravated unlawful use of a weapon ("UUW"), a felony. (*Id.* ¶ 36.) In approving

---

[2]Defendants state that it is "disputed" whether, among other things in the pertinent statement of fact, Rubald made this comment. But they submit no evidence to the contrary. Their substantive response is that "Officer Rubald discussed Plaintiff's card from Minnesota at the Sixth District Police station." (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12.) That evidence does not contradict plaintiff's testimony that Rubald made such a comment at the scene, so the Court deems admitted that portion of paragraph 12. At his deposition, Rubald testified that he could not remember whether he looked through plaintiff's wallet at the scene or whether plaintiff told him at the scene that he was licensed to have a gun in Minnesota. (Rubald Dep. at 57-58.)

the charge, Kantas relied what Rubald told him about plaintiff's actions and proximity to the gun, what plaintiff had said, and where in the vehicle the gun and ammunition were recovered. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 14.) Kantas recorded the information he received from Rubald on a "Crime Fact Sheet." (ECF No. 130-13, Dep. of Nicholas Kantas 15-16 & Ex. 1.) His fact sheet for this incident states under "Incident Notes" that the arresting officers observed Hill drive through a stop sign; Hill was pulled over; he was seen "making movements in the back seat of the car"; when Hill was ordered from the car, he told the officers that there was a gun in the back seat and ammunition in the front center console; and Hill was taken into custody. (*Id.*, Ex. 1.) The section of the fact sheet pertaining to Hill's oral statement reads: "D. stated in summary that he bought the gun in Minnesota and he had kept it in the car since he bought it." (*Id.*) The fact sheet bears an outdated Illinois address on South Morgan Street in Chicago for both Mr. and Mrs. Hill; Kantas said that he had no way of knowing whether that information came from an officer or from a computer search that Kantas himself had performed when reviewing the matter. (Kantas Dep. 16-17 & Ex. 1.)

Rubald prepared the relevant "Arrest Report" and "Original Case Incident Report." (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 27.) The reports, which list different versions of plaintiff's outdated Chicago address, state that after observing plaintiff commit a traffic violation and approaching him to issue a citation, Rubald noticed plaintiff making "furitive [sic] movements towards the rear of the vehicle." (Rubald Dep., Exs. 7 & 8.) They further state that plaintiff told the officers that there was a gun on the floor near the rear passenger seat, which was recovered, in addition to a magazine with nine bullets in the center console arm rest. (*Id.*) The reports also state that plaintiff told Habiak that he "bought the gun in Minnesota for $560 and that he has had the gun in his car since he left Georgia." (*Id.*)

Habiak completed the "Vehicle Tow Report" for plaintiff's car as well as the following criminal complaints against plaintiff: (1) a misdemeanor complaint for possession of ammunition without a FOID; (2) a complaint for preliminary examination for the felony charge of aggravated UUW; (3) a Class C misdemeanor/ordinance violation complaint for possessing a firearm without a valid registration certificate; and (4) a misdemeanor complaint for possessing a firearm without a FOID. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 29; ECF Nos. 130-17, 130-18, 130-19 & 130-20.) With Rubald's permission, Habiak signed Rubald's name to each of the four complaints after he told Rubald what he was writing and Rubald reviewed each one. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 23; Rubald Dep. 105-08; ECF No. 130-9, Dep. of Guy Habiak Jr. 103.) In the complaint for aggravated UUW, Rubald swore under oath that plaintiff "had in his possession a firearm in any vehicle which was unloaded, uncased and the ammunition for the weapon was immediately access[i]ble at a time of the offense and he was not on his own land, abode or fixed place of business in violation of 720 ILCS 5/24-1.6-A-1." (ECF No. 130-18.)[3] In the other complaints, Rubald averred that plaintiff possessed a gun and ammunition without a valid FOID or registration certificate. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 20-22.)

Johnson completed property inventory reports (which Rubald signed) as well as a "Chicago Police Department Citation and Complaint" for failing to stop at a stop sign; the citation bore plaintiff's Minnesota address. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 28, 40; ECF No. 130-8, Dep. of Robert Johnson, Ex. 2; (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 18.)

---

[3]This language reflects minor subsequent changes by the Cook County State's Attorney's Office, evidently to conform to the language of the statute. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 41.)

Johnson obtained that address either through the law enforcement computer network or from plaintiff's Minnesota driver's license. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 24.) Johnson did not inventory any gun case, FOID card, or Minnesota permit in relation to plaintiff's arrest, nor did the officers document in any way that plaintiff's gun was in a case. (*Id.* ¶¶ 16-18.)

### The Legal Proceedings

On August 4, 2011, Rubald testified at plaintiff's preliminary hearing on the aggravated UUW charge. (*Id.* ¶ 29.) He testified that he saw plaintiff run a stop sign stop sign at 84th and Morgan; after plaintiff was stopped and Rubald approached the vehicle, he saw plaintiff "making furtive movements toward the rear of his seat;" an unloaded gun was found on the floor of the vehicle behind the driver's seat; and a magazine containing nine bullets was found in the arm rest and was "immediately accessible." (*Id.*; ECF No. 135-9, Prelim. Hr'g Tr.) Rubald also testified that the gun was not in a case and he did not find a case in the car. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 30.) On direct examination, Rubald stated that plaintiff did not have a valid FOID at the time. (Prelim. Hr'g Tr. 5.) On cross-examination, Rubald conceded that plaintiff had the Minnesota permit but stated that he had "no idea" whether it was valid. (*Id.*) He also stated that although plaintiff's identification reflected that he had been living in Minnesota, he didn't "know for certain if [plaintiff] was [living there] or not." (*Id.* at 10.)

The judge presiding over the preliminary hearing acknowledged that the FOID statute (which prohibits the possession of a firearm in Illinois without a FOID) contains an exemption for nonresidents who have "an out of state card." (*Id.* at 11.) She nonetheless found that probable cause existed for the aggravated UUW charge because Rubald "testified clearly [that] the gun was not in a case," and the version of the statute applicable at that time provided that regardless of whether one has a valid FOID, one can be criminally liable when the firearm

possessed was unloaded yet uncased and the ammunition for the weapon was immediately accessible. (*Id.*; *see also* 720 ILCS 5/24-1.6(a)(1)(3)(B) (Ill. P.A. 96-1107, § 5, eff. Jan. 1, 2011).) So the felony case against plaintiff proceeded, and the remaining charges were dismissed by way of *nolle prosequi*. (Prelim. Hr'g Tr. 11-12.)

Plaintiff's criminal bench trial took place on June 6, 2013. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 44.) Rubald and Habiak testified, but Johnson did not. (*Id.* ¶¶ 45-46.) Plaintiff and his wife testified. (ECF No. 130-22, Dep. of Gerardo Tristan 16.) Plaintiff was found not guilty. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 49.)

### The Warrant on the Electronic Docket

After the criminal trial concluded, plaintiff was told by a court employee that a warrant had been issued for his arrest; he was never arrested as a result. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 50, 52.) A screen shot of the Circuit Court of Cook County's electronic docket for plaintiff's criminal case, taken on July 1, 2013, includes two entries indicating that a warrant was ordered and issued, specifying "no bail," on June 6, 2013, the day of trial. (*Id.* ¶ 51.) No warrant was written as a court order, nor is there any warrant in the court file. (*Id.* ¶ 62.) The two entries no longer appear on the electronic docket, and the chief deputy clerk for the Circuit Court testified at a deposition that he believes that they were mistakes that were later corrected by someone with access to modify the electronic docket. (ECF No. 130-24, Dep. of John Biga 24, 52.) Only Circuit Court employees have the ability to change entries in the electronic docket; the Chicago Police Department does not have access to the system to do so. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 58-59.)

*Condition of Plaintiff's Vehicle*

In early July 2011, plaintiff went to the vehicle impound lot to retrieve some personal items from his vehicle. (*Id.* ¶ 63; Demetris Hill Dep. 240-41.) Plaintiff says that when he first saw his vehicle in the lot, he noticed that it had been damaged in several ways. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 64.) The gas cap, fuel nozzle clip, and rearview mirror were missing; the fuel light remained on; there was a substance like antifreeze running from the bottom of the vehicle; the glove box, center console, and passenger door panel had been dislodged; and the floor hatch in the rear would no longer close or lock. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 26.)[4] A compact disc and a pocketknife that had been in the vehicle were missing. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 65; Demetris Hill Dep. 174-75.) Plaintiff says that his gun case, however, was in the vehicle, resting on top of the floor compartment in which it had been stored. (Demetris Hill Dep. 254.) The vehicle itself was inoperable; plaintiff could not put it in gear. (*Id.* 243-44; Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 64.) Plaintiff's agent retrieved the vehicle from the impound lot on July 15, 2011. (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 71.)

It is undisputed that the defendant officers had access to plaintiff's vehicle at various times between 1:20 a.m. and 3:30 a.m. on July 2, 2011. (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 34.) Plaintiff did not see any of the defendant officers damage his car. (Pl.'s Resp.

---

[4]Defendants dispute plaintiff's testimony about the condition of his car, relying only upon the fact that Habiak "completed a Vehicle Tow Report noting the condition of the vehicle at the time it was in Chicago Police custody and no such damage was present." (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 26.) But the fact that Habiak completed such a report on July 2, 2011 does not refute plaintiff's testimony about the condition of his car at the time he went to the impound lot several days later.

Defs.' LR 56.1(a)(3) Stmt. ¶ 71.)  Although the impound lot had a complaint process for damaged or missing property, plaintiff did not pursue such a complaint.  (*Id.* ¶¶ 69-70.)

***Plaintiff's Internal Affairs Complaint***

On July 11, 2011, plaintiff filed a complaint against Rubald and Habiak with the Internal Affairs Division ("IA") of the Chicago Police Department.  (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 27.)  According to the "Allegations" section of the IA "Face Sheet," plaintiff complained to IA that the officers falsely arrested him for UUW and failed to return his Minnesota driver's license and FOID card; one officer was "amused" by [Mrs. Hill's] being left on the street after the incident; and the same officer also made "unwarranted comments regarding [Mrs. Hill] being a 'street walker.'"  (ECF No. 140.)  Rubald and Habiak were formally notified about plaintiff's complaint on August 24, 2011.  (Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 27.)

Before plaintiff's criminal trial, plaintiff was contacted by telephone about his IA complaint by a different Officer Johnson of the Chicago police.  (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 73-74.)  After playing "phone tag" with the officer through voice mails over the course of a few days, plaintiff had a brief and hostile conversation with him.  (Demetris Hill Dep. 184-86, 194, 200-02.)  Plaintiff says that subsequently, he did not have any further contact with, or voicemails from, the Chicago police or IA, and his criminal defense attorney handled the IA matter.[5]  (*Id.* at 208; Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 76-77.)  Neither plaintiff nor his wife was ever contacted by any of the defendant officers.  (*Id.* ¶¶ 78-80.)

---

[5]According to plaintiff's response to defendants' statement of material facts, "the IAD file indicates that the case was closed administratively because Plaintiff did not sign a sworn affidavit." (Pl.'s Resp. Defs.' LR 56.1(a)(3) Stmt. ¶ 75.)  For this proposition, plaintiff cites two pages of ECF No. 140 that are Bates stamped FCRL8187 and 8188.  Those pages do not explicitly so state, but the manner in which the IA complaint was resolved is mentioned simply for purpose of the narrative and is not material to the Court's decision.

# PROCEDURAL BACKGROUND

This case was previously assigned to Judge Ellis, who dismissed with prejudice as time-barred plaintiff's claims that are premised on his arrest and imprisonment. (ECF No. 39, Op. & Order of May 14, 2014.) Judge Ellis also dismissed with prejudice plaintiff's due process claim, which alleged that the defendant officers violated *Brady v. Maryland*, 373 U.S. 83 (1963), as well as plaintiff's claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (ECF No. 66, Op. & Order of Sept. 30, 2014.)

The operative complaint is the Third Amended Complaint. Plaintiff's remaining claims are for a civil conspiracy to interfere with his constitutional rights, in violation of 42 U.S.C. § 1983 (Count I); an equal protection "class of one" violation (Count III); malicious prosecution (Count V); conspiracy to commit malicious prosecution (Count VI); intentional infliction of emotional distress ("IIED") (Count VII); indemnity (Count VIII); and respondeat superior (Count IX).

# DISCUSSION

## A.     The Scope of Plaintiff's Section 1983 Conspiracy Claim

As an initial matter, the Court must address Count I, in which plaintiff alleges that defendants conspired to interfere with his equal protection right as well as his due process right to a fair trial, in violation of § 1983. The parties disagree about the extent to which this claim survives Judge Ellis's orders. Judge Ellis ruled in her order of September 30, 2014 that plaintiff's federal conspiracy claim was time-barred to the extent that it relies on events that occurred on July 2, 2011, one day outside the two-year limitations period, but it may proceed to the extent that it relies on events that occurred within two years of filing, "such as swearing out false reports, attempting to intimidate Mr. Hill, and causing a warrant to be issued on the day of

his acquittal." (Mem. Op. & Order of Sept. 30, 2014 at 4.) However, Judge Ellis went on to dismiss with prejudice Count II, plaintiff's due process claim, rejecting plaintiff's contention that the claim should survive dismissal because of his allegations of conspiracy. (*Id.* at 4-6.)

It is defendants' view that Judge Ellis "clearly dismissed" plaintiff's claim that defendants conspired to violate his right to due process. (ECF No. 145, Defs.' Reply at 2.) Plaintiff, on the other hand, contends that "although the *Brady* claim did not survive, the conspiracy to violate due process did survive." (ECF No. 136, Pl.'s Opp'n at 10.) After closely reviewing Judge Ellis's opinions, the Court agrees with defendants. Plaintiff emphasizes language from the opinions in which Judge Ellis concluded that a portion of plaintiff's due process claim was not time-barred. But that issue is distinct from the issue of whether the due process claim was sufficiently stated. Judge Ellis held to the contrary, and upon dismissing plaintiff's *Monell* claim with prejudice, she reasoned that the "failure of Mr. Hill's due process claim dooms the *Monell* claim." (Mem. Op. & Order of Sept. 30, 2014 at 4-7.) As defendants point out, if a plaintiff fails to establish an underlying constitutional violation, a corresponding conspiracy claim necessarily fails. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). The only surviving premise for the conspiracy claim in Count I is the alleged violation of plaintiff's right to equal protection.[6]

---

[6]Even if Judge Ellis's opinion could be construed as allowing a portion of plaintiff's federal conspiracy claim to proceed on a due process theory, it would not survive summary judgment. As discussed below, plaintiff fails to submit any evidence in support of his allegations that the officers intimidated him, damaged his vehicle, and caused a warrant to be issued for his arrest. What is left of the claim are the allegations that the defendant officers withheld exculpatory evidence and deliberately made false statements. Illinois law provides an adequate postdeprivation remedy for this conduct—the tort of malicious prosecution. *See Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010); *Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015).

**B.      Summary Judgment**

**1.      Legal Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500 (7th Cir. 2008).  "A factual dispute is 'genuine' only if a reasonable jury could find for either party."  *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted).  When the nonmovant has the burden of proof, the moving party can satisfy its burden on summary judgment by "pointing out to the district court" that there is no evidence supporting the nonmovant's claim or defense.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).  "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Modrowski*, 712 F.3d at 1168 (quoting *Celotex*, 477 U.S. at 322).

**2.      Equal Protection "Class of One" Violation (Count III) and Section 1983 Conspiracy to Violate Plaintiff's Right to Equal Protection (Count I)**

In Count III, plaintiff asserts a "class of one" equal protection claim, and in Count I a conspiracy to violate plaintiff's right to equal protection.  The Seventh Circuit recognizes "class of one" claims against police officers for irrational or malicious application of their law enforcement powers.  *Williamson v. Curran*, 714 F.3d 432, 448-49 (7th Cir. 2013).  Although the standard for proving such a claim is currently unsettled in this circuit, *Black Earth Meat Market,*

*LLC v. Village of Black Earth*, 834 F.3d 841, 851 (7th Cir. 2016) (citing *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc)), the claim "at a minimum" requires proof that the defendants intentionally treated plaintiff differently from others situated similarly to him for no rational reason, *Williamson*, 714 F.3d at 449. *See also Geinosky v. City of Chi.*, 675 F.3d 743, 747 (7th Cir. 2012).

Plaintiff alleges that defendants violated his right to equal protection by attempting to intimidate him into pleading guilty and refraining from filing an IA complaint and by creating false reports that they knew prosecutors would use.[7] (Compl. ¶¶ 69-70.) The alleged intimidation consists of "destroying items in Plaintiff's car"; "making a harassing phone call"; "caus[ing], directly or indirectly, a warrant to be issued" in June 2013 for plaintiff's arrest; and "continuing to show up to court for baseless charges." (*Id.* ¶¶ 42, 70.) The Court will address each kind of alleged conduct in turn.

Defendants contend that there is no evidence that they stole items from, or damaged, plaintiff's vehicle. They are correct. Plaintiff asserts that "there is a reasonable inference that the damage done to plaintiff's car was done by the Defendants in an effort to target and intimidate Plaintiff," citing the mere fact that the officers had access to plaintiff's car for the two-hour period prior to its being towed to the impound lot, and arguing that they "had ample time and opportunity to tamper with the car." (Pl.'s Opp'n at 16.) But the fact of their access alone does not permit a reasonable inference that they damaged, or stole anything from, the vehicle. Plaintiff does not offer evidence that the officers had exclusive access to the vehicle. He concedes that he never saw any of the officers damage his car, and he does not offer evidence

---

[7]Plaintiff also alleges that his right to equal protection was violated by his false arrest, but Judge Ellis previously held that any claims premised on plaintiff's arrest are time-barred.

that anyone else witnessed them steal from or damage the vehicle, or other evidence that would permit such an inference. Similarly, plaintiff submits no evidence that the defendant officers made an alleged "harassing phone call," had any involvement in the calls plaintiff received about his IA complaint from a different Officer Johnson, or had any involvement in the appearance of an arrest warrant on the state case's electronic docket after plaintiff was found not guilty at trial.

What remains of the bases for plaintiff's equal protection claims are the allegations that the defendant officers made out false reports and "continu[ed] to show up to court for baseless charges." (Compl. ¶¶ 69-70.) That is a reframed malicious prosecution claim.[8] Essentially, plaintiff and his wife present a story different from that of the officers about the events that led to plaintiff's arrest for aggravated UUW, and they say that the officers lied and continued to lie about those events. This evidence is not sufficient to stave off summary judgment on plaintiff's equal protection claims. Defendants argue that plaintiff has failed to identify someone who was similarly situated to him but treated differently. Plaintiff responds that he need not identify such an individual because there is "substantial evidence that Defendants were out to target [plaintiff] as soon as they stopped him." (Pl.'s Opp'n at 14.) The Court does not agree. Plaintiff relies on decisions like *Geinosky* and *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013), in which the Court of Appeals explained that "[i]f animus is readily obvious, it seems redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual." According to plaintiff, a jury could reasonably infer that the defendant

---

[8] *Cf. Wade v. Collier*, 783 F.3d 1081, 1088 (7th Cir. 2015) ("Where an equal protection claim is merely a rewording of a malicious prosecution claim, dismissal of the equal protection claim is appropriate.").

officers "irrationally singl[ed] out" plaintiff by virtue of their "misconduct (falsifying reports, swearing out false complaints, [and] testifying falsely)."  (Pl.'s Opp'n at 15.)

While the Court of Appeals has recognized that some "class of one" claims may proceed without the need for pointing to comparators, such instances are "unusual" and require "direct evidence of arbitrary treatment."  *See Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 n.3 (7th Cir. 2014).  In *Swanson*, *Geinosky*, and similar cases, there was such direct evidence—a pattern or a series of actions taken against the plaintiff that appeared illegitimate on their face, from which intentional discriminatory treatment could be inferred.  Here, there was a single traffic stop and ensuing prosecution, which by themselves do not demonstrate a readily obvious animus.  Plaintiff fails to show any pattern or campaign of harassment, so the Court will enter summary judgment in favor of defendants on plaintiff's equal protection claims in Counts I and III.  In light of this ruling, the Court need not discuss defendants' argument regarding qualified immunity.

### 3.  Malicious Prosecution and Conspiracy to Maliciously Prosecute (Counts V & VI)

Defendants maintain that they are entitled to summary judgment on plaintiff's claims for malicious prosecution (Count V) and conspiracy to commit malicious prosecution (Count VI).  To prove the tort of malicious prosecution under Illinois law, a plaintiff must show the following elements: "(1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages."  *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (citing *Sang Ken Kim v. City of Chi.*, 858 N.E.2d 569, 574 (Ill. App. Ct. 2006)).  "The failure to establish any one element bars recovery."  *Id.*

Defendants do not contest the second and fifth elements of malicious prosecution, that the state-court criminal proceedings were terminated in plaintiff's favor, and he suffered damages. But they argue that plaintiff cannot satisfy the first element, the commencement or continuation of a proceeding. The Court is unpersuaded. "Liability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff. Rather, liability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000); *see also Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) ("Illinois law requires that, in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation.") (internal quotation marks and citation omitted).

The record shows that Rubald prepared the arrest report and case incident report, which state (falsely, according to plaintiff) that the gun was found on the floor of the vehicle near the rear passenger seat and the ammunition in the center console, and that Habiak prepared, and signed Rubald's name to, the criminal complaint for preliminary examination for aggravated UUW, which states (falsely, according to plaintiff) that the gun was uncased. These facts are sufficient to create a material issue as to whether Rubald and Habiak "commenced or continued" legal proceedings against plaintiff. *See Collier v. City of Chi.*, No. 14 C 2157, 2015 WL 5081408, at *9 (N.D. Ill. Aug. 26, 2015) (citing *Jones v. City of Chi.*, 856 F.2d 985, 994 (7th Cir. 1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police

officer who deliberately supplied misleading information that influenced the decision."); *Padilla v. City of Chi.*, 932 F. Supp. 2d 907, 928-29 (N.D. Ill. 2013).

The same is not true as to defendant Johnson. Plaintiff simply points to the fact that Johnson completed the inventory reports that, according to plaintiff, failed to include his gun case. Plaintiff does not cite any evidence, or even argue, that the contents of the inventory reports influenced prosecutorial decision-making. Nor does plaintiff point to evidence that Johnson was in such a position at the scene that it could reasonably be concluded that he had knowledge of fabricated evidence and condoned or turned a blind eye to the other officers' allegedly wrongful conduct. *See, e.g., Collier*, 2015 WL 5081408, at *9. Indeed, Johnson testified at his deposition that he did not see Rubald recover the gun from plaintiff's vehicle. (Johnson Dep. 38.) Because a reasonable jury could not conclude that Johnson commenced or continued the legal proceedings against plaintiff, the Court will grant summary judgment in favor of Johnson on plaintiff's malicious prosecution claims.

Defendants also contend that the officers had probable cause to believe that plaintiff committed the offense of aggravated UUW. Based on the testimony of plaintiff and his wife, however, a reasonable jury could find that probable cause was lacking. Defendants' argument centers on whether they had probable cause to charge plaintiff under another provision of the aggravated UUW statute, which prohibited carrying a weapon in a vehicle when the person possessing the firearm had not been issued a currently valid FOID. The charges against plaintiff, however, were not brought on that basis, and probable cause to believe an individual committed one crime does not foreclose a malicious prosecution claim for prosecuting the individual on a different charge. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682-83 (7th Cir. 2007). Furthermore, it was the law in Illinois at the time of plaintiff's arrest that a valid permit or

license from another state can substitute for the Illinois FOID requirement in the aggravated UUW statute. *See People v. Holmes*, 948 N.E.2d 617, 624 (Ill. Apr. 7, 2011). It is undisputed that plaintiff showed his valid Minnesota permit to Rubald.

Finally, defendants assert that there is no evidence of malice. But "malice may be inferred from lack of probable cause when 'there is no other credible evidence which refutes that inference.'" *Collier*, 2015 WL 5081408, at *8 (citing *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1223 (Ill. App. Ct. 2003)). Defendants have not pointed to other evidence that would refute this inference, and if a jury found that the defendants ignored and lied about exculpatory evidence, it reasonably could find the absence of probable cause and malice.

Defendants present no persuasive argument for granting summary judgment in favor of Rubald and Habiak on the malicious prosecution claim; therefore, the Court denies those defendants' motion for summary judgment as to that claim. And because defendants' argument for summary judgment on the malicious-prosecution conspiracy claim simply follows their arguments on the underlying claim, the Court denies Rubald and Habiak's motion as to that claim as well.

### 4. Intentional Infliction of Emotional Distress (Count VII)

In response to defendants' motion, plaintiff moves to dismiss his IIED claim. In reply, defendants urge the Court to reject plaintiff's request and enter summary judgment in their favor on this claim. Voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2) after the defendant serves a motion for summary judgment is to be granted only "on terms that the court considers proper." For example, the court may require that the dismissal be with prejudice or condition the dismissal on plaintiff's payment of defendant's costs and attorney fees. *Cauley v. Wilson*, 754 F.2d 769, 771 (7th Cir. 1985). Plaintiff does not indicate whether he would be

19

willing to take a with-prejudice dismissal on this claim. In light of the age of this case and the fact that it is at the summary-judgment stage, the Court believes that voluntary dismissal of Count VII would not be proper unless it is with prejudice. However, under *Marlow v. Winston & Strawn*, 19 F.3d 300, 305 (7th Cir. 1994), the Court must give plaintiff the opportunity to reject this condition and withdraw his motion to voluntarily dismiss. Accordingly, defendants' motion is taken under advisement as to Count VII pending the filing of a notice by plaintiff indicating whether he will agree to a with-prejudice dismissal of this claim.

**5.      Indemnity and Respondeat Superior (Counts VIII and IX)**

Defendants maintain that the City is entitled to summary judgment on plaintiff's claims for indemnification and respondeat superior because the defendant officers are not liable on any claim. But because the malicious prosecution claims against Rubald and Habiak survive, so do the derivative claims in Counts VIII and IX.

**CONCLUSION**

Defendants' motion for summary judgment [128] is granted in part, denied in part, and entered and continued in part. The motion is granted as to plaintiff's equal protection claims (Counts I and III), and summary judgment is entered in favor of defendants and against plaintiff on those claims. The motion is also granted as to plaintiff's malicious prosecution claims (Counts V and VI) against defendant Robert Johnson, and summary judgment is entered in favor of defendant Johnson on those claims. The motion is denied as to plaintiff's claims for malicious prosecution and conspiracy to commit malicious prosecution against Rubald and Habiak (Counts V and VI); indemnity (Count VIII); and respondeat superior (Count IX). The motion is entered and continued as to plaintiff's claim for intentional infliction of emotional distress (Count VII), and plaintiff is given until January 25, 2017 to file a notice indicating

whether he will agree to a with-prejudice dismissal of this claim. The Clerk is directed to terminate Kameo Hill from the docket as a plaintiff because no claims are asserted by her in the current complaint. A status hearing is set for February 7, 2017 at 9:30 a.m. to discuss the next steps in the case.

**SO ORDERED.**                    **ENTERED:   January 18, 2017**

_____
**JORGE L. ALONSO**
**United States District Judge**